IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA HILL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 588 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Yolanda Hill ("Hill" or "Plaintiff"), brought suit against Cook County, Illinois ("Defendant" or "the County") for three employment-related violations: violation of her First Amendment right to freedom of religion brought pursuant to 42 U.S.C. § 1983, discrimination on the basis of religion in violation of Title VII, and failure to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"). Defendant moves for summary judgment on all claims. Defendant's Motion for Summary Judgment is granted as to the § 1983 claim and the ADA claim, and denied as to the Title VII claim for religious discrimination.

Facts

Plaintiff lives in Chicago and has suffered from epilepsy throughout her life. Plaintiff's Statement of Material Facts Which Mandate Denial of Summary Judgment ("Pltf. 56.1 Add. Facts") at ¶ 1. Her epilepsy causes her to have seizures, and these seizures usually occur in the morning hours of the day. These seizures can be caused by stress. When the epileptic seizures occur, they last less than one minute, but during that time she cannot stand, speak, or function. *Id.*

Hill had been working for Cook County Hospital for nearly 25 years, starting in 1982. Defendant's Statement of Undisputed Material Facts ("Def 56.1 Facts") at ¶¶ 1, 5. The County originally hired Hill as a patient transporter at Cook County Hospital. *Id.* at ¶ 5; Pltf. Ex. B. at 22. In 1988, Plaintiff applied for the position of elevator operator because she found that the position of patient transporter was too physically demanding. *Id.* at ¶ 7-8. She received the elevator position in 1988 and worked in that position until 2002 when the elevator operator position was phased out as part of the hospital's relocation to a new building. *Id.* at ¶ 9. In 2002, the County informed her that her position was no longer available and provided her with a choice of different positions in order to remain employed. Hill chose to become a patient transporter again. *Id.* at ¶ 10.

In her new transporter position starting in 2002, Mr. Babajide Labinjo ("Labinjo") supervised Plaintiff. *Id.* at ¶ 11. When she first returned to the job in 2002, Plaintiff found that she could not perform the job of transporter because she had been placed on the daytime shift (7 a.m. to 3 p.m.). Plaintiff experienced more seizures in the early part of the day; when she worked the evening shift (3 p.m. to 11 p.m.), she did not have seizures. Pltf. 56.1 Add. Facts at ¶ 6. Once she was transferred to the evening shift in February of 2003, Hill was able to perform the transporter job. Pltf. Dep. at 57-61.

Plaintiff is a member of the Children of Light Church which practices Orthodox Judaism. Pltf. 56.1 Add. Facts at ¶ 8. As part of her religion, Plaintiff does not work during the Sabbath, defined as sundown Friday through sundown Saturday. Pltf. Dep. at 111-13. Hill told her supervisor that she could not work the Sabbath, but Labinjo told her that he could not schedule her differently from other employees to avoid work on the Sabbath. Pltf. Dep. at 114-16. Labinjo testified that he could not change the schedule because he was following the terms of the hospital's collective

2

bargaining agreement, applicable to all employees under his supervision, which required that employees work some weekends. Def. 56.1 at ¶ 32.

In February 2003, Plaintiff received a notice of disciplinary hearing regarding her attendance. *Id.* at ¶ 36. Plaintiff had been absent seventeen times between May and September 2003, all of them Fridays and Saturdays. *Id.* at ¶ 38; Pltf. Ex. L. During that time, when she called in to report an absence, she called in sick. Causey Dep., Def. Ex. 9, at 8-9. Carol O'Neil, a Union representative who attended the disciplinary hearing with Plaintiff, testified that she and Ms. Hill informed Labinjo that Hill needed religious accommodation at the hearing but that Labinjo would not accommodate the requested change in schedule. Pltf. Ex. J at ¶ 3. As a result of the hearing, Plaintiff received a five-day suspension. Def. 56.1 Facts at ¶ 43.

In January 2004, Plaintiff injured her knee and did not work from January through March 2004. Def. 56.1 Facts at ¶¶ 14-15. Upon returning to the hospital from her leave, Plaintiff returned with restrictions as to the amount that she could pull or lift. Def. 56.1 Facts at ¶ 49, Pltf. 56.1 Resp. at ¶ 21. Plaintiff admitted that between 2004 and 2006, she was not qualified to perform the essential functions of the position of transporter. *Id.* at ¶ 16.

After she returned to work in 2004, Hill worked with human resources at Cook County Hospital to find an alternate position. *Id.* at ¶ 50. She admits that she could not meet the available qualifications for two open positions, clerk and telephone operator, because she did not have the minimum qualifications. *Id.* at ¶¶ 20-25. Plaintiff then applied for the position of Building Service Worker ("BSW"). The Job Summary of a BSW includes the ability to stand for long periods of time, stoop, bend, reach, and lift up to 40 pounds. Def. Ex. 8. Hill believed that she could meet these requirements but that she might not be able to stoop, bend, and reach due to her knees. Pltf. Dep.

3

at 104-106. Plaintiff admits that she sought to be given an accommodation in which "she was not required to perform all the functions of the job." Def. Ex. 4 at ¶ 14. The Director the of environmental services department at the Hospital, Arndell Ricks ("Ricks"), testified that stooping, bending, and reaching were necessary to perform the job duties of a BSW. Ricks Dep., Pltf. Ex. V, at 29-39. Ricks admitted that he had several disabled persons who worked in the environmental services department, each of whom had some restrictions as to one of the requirements of the BSW position. Def. 56.1 Facts at ¶ 53; Ricks Dep., Pltf. Ex. V, at 30-31. When Plaintiff applied for a job as a BSW in the environmental services department in 2004, the human resources analyst denied her application because she could not meet the job qualifications. Def. 56.1 at ¶ 55,56; Pltf. Resp. 56.1 at ¶¶ 55-56; Pltf. Add. 56.1 at ¶¶ 35-37.

In late 2004, Plaintiff applied for and received disability benefits from the Pension Board of Cook County. Def. 56.1 at ¶ 57. She received her final disability payment on July 31, 2005. *Id.* On December 8, 2005, Plaintiff resigned from Cook County employment and withdrew her entire pension. Def. 56.1 at ¶¶ 59-60.

Standard of Review

Summary judgment is correct when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must construe all facts in a light most favorable to the non-moving party and view all reasonable inferences in the non-moving party's favor to determine if a genuine issue of a material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is one that is outcome-determinative under governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596,

598 (7th Cir. 2000). In analyzing the facts for the purposes of a summary judgment, the Court will "limit its analysis of the facts…to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). But a party must do more than rely on unsubstantiated facts to defeat summary judgment. *Greer v. Bd. of Educ. of the City of Chi.*, 267 F.3d 723, 729 (7th Cir. 2001). Parties must cite to specific support in the record. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

## Discussion

*Religious Discrimination Pursuant to 42 U.S.C. § 1983*

Hill claims that the County, a municipality, violated her First Amendment rights when it failed to accommodate her religious practices. A municipality cannot be held liable for a violation of § 1983 solely on the theory of *respondeat superior*; there must be evidence that an action on the basis of a policy of the municipality violated Plaintiff's constitutional or federal rights. *See Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978). A plaintiff may prove that a municipality violated her rights by one of three methods: (i) an injury caused by the existence of an express policy; (ii) an injury caused by a widespread practice or custom; or (iii) an injury caused by a person in the municipality 'with final policymaking authority.'" *Kujawski v. Bd. of Comm'rs of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999). A plaintiff may prove an injury caused by a person with final policymaking authority by showing either: (i) the person with authority directly caused the injury, or (ii) the person with authority ratified or approved a subordinate's decision and the basis for the decision. *See Killinger v. Johnson*, 389 F.3d 765, 771-72 (7th Cir. 2004).

Plaintiff confirms in her Response to the Motion for Summary Judgment that she is proceeding under the theory that Labinjo or the hearing officer who reviewed Labinjo's decision had "final authority with respect to the religious accommodations claims." Pltf. Resp. at 9. Labinjo made the decision not to accommodate Plaintiff's request that she not be scheduled to work between sundown Friday and sundown Saturday, and issued a five-day suspension to Plaintiff on account of her excessive absenteeism on Fridays and Saturdays. Labinjo issued the five-day suspension after Plaintiff and her representative explained her religious convictions and practices to Labinjo at the hearing. Plaintiff appealed that suspension to the Cook County Board and a hearing officer later affirmed Labinjo's decision. *See* Pltf. Resp. at 9-10.

"A person's status as a final policymaker under § 1983 is a question of state or local law." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) *quoting Kujawski*, 183 F.3d at 737. "To identify public officials with final policymaking authority, the Court reviews state and local law, as well as custom or usage having the force of law." *Brandt v. Bd. of Educ. of City of Chicago*, 420 F. Supp. 2d 921, 937 (N.D. Ill. 2006), *citing Killinger*, 389 F.3d at 771. A final policymaker is not the same as a final decisionmaker for the purpose of municipal liability under § 1983. Unreviewed discretion in employment decisions is not the same as "policymaking authority;" there must be evidence that the municipality delegated authority to make policies concerning employment to the decisionmaker, whether by law or by custom. *See Killinger*, 389 F.3d at 771 ("The mere authority to implement pre-existing rules is not the same as the authority to set policy."); *accord Brandt*, 420 F. Supp. 2d at 937 (N.D. Ill. 2006) ("Not every decision an official makes involves policymaking as required under the *Monell* framework").

6

Plaintiff has not presented evidence of any law or custom in the hospital or in the county that gave Labinjo or the hearing officer final authority to set county-wide policies regarding religious accommodation. Labinjo had authority to make a decision about Plaintiff's employment as a transporter, but there is no evidence that Labinjo had policy-making authority with respect to religious accommodation policies throughout Defendant's workplaces. *See Brandt*, 420 F Supp. 2d at 937 (granting summary judgment where decision-making principal of a school had discretionary authority to discipline within his school but did not have authority to make policy decisions about city-wide school discipline policy). And there is no evidence of a custom of blanket ratification by the hearing officer; to the contrary, the hearing officer reviewed the record and wrote a detailed two-page opinion explaining his reasons for affirming Labinjo's decision, some parts of which agreed with Labinjo's decision and some parts of which suggested possible alternative actions. *Compare Kujawski*, 183 F.3d at 739 (genuine issue of fact existed where evidence suggested that a county appeals board had an unspoken policy not to review appeals from the decisionmaker). Nor has Plaintiff presented evidence that the opinion of the hearing officer was the final review available to her.

Plaintiff argues that summary judgment should be denied because Defendant has *not* offered evidence that the hearing officer was *not* speaking officially for the County. But Plaintiff misstates Defendant's burden at summary judgment; once Defendant has brought forth evidence sufficient to permit judgment in its favor as a matter of law, it is Plaintiff's burden to show evidence of each element of her claim. Plaintiff has failed to meet that burden with respect to any causal link between the adverse decision by Labinjo or the hearing officer and a policy of the municipality. *See Sims v. Mulcahy*, 902 F.2d 524, 544 (7th Cir. 1990) (summary judgment in a *Monell* claim appropriate

where Plaintiff failed to present evidence of causal link between the injury and the municipality's policy). Therefore, Plaintiff's Section 1983 claim is dismissed.

*Religious Discrimination Under Title VII*

Next, Defendant moves to dismiss Plaintiff's claim that the hospital discriminated against her when it refused to accommodate her religion by granting her a schedule change so that she need not work from sundown Friday to sundown Saturday. In order to demonstrate evidence of a *prima facie* case of religious discrimination, Plaintiff must show that: (i) the practice conflicting with employment is religious; (ii) she called the practice to Defendant's attention; and (iii) the religious practice is the basis for her discriminatory treatment. *See EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997), *citing Wright v. Runyon*, 2 F.3d 214, 216 n.4 (7th Cir. 1993). Once a plaintiff has demonstrated evidence of a *prima facie* case, the burden shifts to the employer to show that it offered a reasonable accommodation of the employee's needs or that a reasonable accommodation would cause the employer an "undue hardship." *Ilona*, 108 F.3d at 1575. "Title VII requires an employer to try to accommodate the religious needs of its employees, that is, to try to adjust the requirements of the job so that the employee can remain employed without giving up the practice of his religion, provided the adjustment would not work an undue hardship on the employer." *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934-35 (7th Cir. 2003); 42 U.S.C. § 2000e(j).

In this case, Plaintiff has met her burden to show evidence supporting a *prima facie* case of religious discrimination. Neither party disputes that Plaintiff is a member of the Children of Light, or that she told Labinjo about her religious practices and the request that she not work from sundown

Friday to sundown Saturday.[1] While Defendant argues that Plaintiff has presented no evidence that she was disciplined for any reason other than absenteeism, Plaintiff produces evidence that her absenteeism was limited to Fridays and Saturdays and was a result of Defendant's failure to accommodate her religious beliefs. Plaintiff also presents testimony that she offered to work Sunday through Thursday, Saturdays after sundown, and Christian holiday shifts in exchange for accommodation of her Sabbath requirement, but that the offer was rejected.

Once Plaintiff presents a *prima facie* case, Defendant may present evidence that accommodation of a religious practice would create an undue burden on the employer. Defendant argues that Labinjo followed the requirement of the hospital union's CBA that each transporter work some weekends. Title VII does not require an employer to change a valid seniority system in order to accommodate an employee's religious beliefs. *See US Airways, Inc. v. Barnett,* 535 U.S. 391, 403 (2002); *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 79 (1977). But the facts raised by Plaintiff create a genuine issue as to the legitimacy of the "undue burden" the CBA creates for Defendant. First, Plaintiff received an accommodation from her prior supervisor as an elevator operator. While the record does not reflect explicitly whether all employees of the hospital worked under the same CBA, the portion of the CBA included by Defendant makes reference to scheduling for "elevator operators, transporters, environmental service workers, and food service workers." Def. Ex. 11 at Section 6. Second, Labinjo's summary of the disciplinary hearing in which he gave Plaintiff a suspension for her Friday and Saturday absences does not indicate that the CBA mandated

---

[1] Defendant argues that the declaration of Carol O'Neil must be stricken because it contains hearsay statements and lacks foundation. To the extent O'Neil declares on the basis of personal knowledge that she attended meetings with Plaintiff and Labinjo, and that she represented Plaintiff at her disciplinary hearing and advocated for Plaintiff's religious accommodation, O'Neil's statements are not hearsay. O'Neil's statements are not offered for the truth of the matter asserted, i.e. that Plaintiff's religious beliefs are or are not true. Rather, the statements are offered as evidence that Labinjo was aware of Plaintiff's request for accommodation.

9

or even influenced his decision not to accommodate. *See* Def. Ex. 13, Pltf. Ex. L. Third, the written denial of Plaintiff's appeal of the suspension fails to mention the CBA as a reason to affirm her suspension, and the appeal board suggested in its opinion that the parties work to find a way to accommodate Plaintiff's request. Finally, the portion of the CBA submitted to the Court does not make any reference to seniority as a factor in weekend shift work; rather, the CBA only states that weekend work "shall be scheduled to be as equal as possible among employees." *See* Def. Ex. 11. The general language of the CBA distinguishes this case from *Hardison* and *Barnett*, in which the Court concluded that giving the plaintiff a shift that accorded with his religious practice would require that the employer take away the preferred shift of a more senior employee. *See Barnett*, 535 U.S. at 403. In this case, the CBA mandated that employees rotate through weekend work, but Plaintiff agreed to work Sunday-Thursday, Saturday after sundown, and holidays. Taking the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant could accommodate Plaintiff's request that she not work Friday sundown through Saturday sundown without undue hardship.

*Discrimination under the ADA*

Finally, Hill claims that the County discriminated against her on the basis of her epilepsy when it refused to accommodate Plaintiff's disability to allow her to work as a BSW. Under the ADA, an employer may not take adverse employment action against a person on the basis of their disability, nor may an employer refuse to make reasonable accommodations for the disability of a qualified individual. *See* 42 U.S.C. § 12112(b)(5)(A); *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2007). Plaintiff's Response to the Motion for Summary Judgment states that she seeks to proceed on both a disparate impact claim and a failure to accommodate claim; however,

Plaintiff's Response only crafts a response to a failure to accommodate claim. "It is important for plaintiffs to be clear about whether they are pressing disparate treatment or failure-to-accommodate claims (or both) because the two are analyzed differently." *Timmons*, 469 F.3d at 1125. Because Plaintiff presents evidence that she could do some but not all of the job duties listed and presented evidence that other disabled individuals received accommodation for their disabilities, both factors relevant to a failure-to-accommodate claim, the Court treats Plaintiff's ADA claims as one for failure to reasonably accommodate a disability.

To establish a *prima facie* case of failure to accommodate a disability, a plaintiff must show evidence that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). In order to show that she is a "qualified individual with a disability," Plaintiff must show both that she suffered from a "disability" under the ADA, and that she was "qualified" for the position she sought.

Plaintiff has not met her burden to show that she was "qualified" for the BSW position. Qualified individuals with disabilities are those who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Defendant's Job Summary of the BSW position states:

> Under direct supervision, perform routine cleaning, sanitizing and maintenance duties in an assigned area within the hospital. Ability to follow oral and written instructions. Ability to stand for long periods of time, stoop and bend and reach. Must be able to lift up to 40 pounds.

Def. Ex. 8. Plaintiff admitted at her deposition that she did not believe she could stoop, bend, reach, or lift up to 40 pounds. *See* Pltf. Dep. at 103-106. Plaintiff disputes without citation that these

11

abilities were essential functions of the BSW position. Pltf. Resp. at 14 ("Not everything can be essential.") Factors to consider in determining whether a duty is an "essential function" under the ADA include the job description, the employer's opinion, the amount of time spent performing the function, the consequences of not requiring it, and past and current work experience. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004). Plaintiff testified at her deposition that she could not perform many of the stated duties in the Job Summary for the BSW position. Plaintiff fails to rebut the testimony of Ricks, the supervisor of the BSWs, that stooping, bending, reaching and lifting are necessary in order to perform as a BSW. Plaintiff points to Ricks' statement that some disabled persons worked as BSWs, but Ricks testimony indicates that these persons were at most limited in only one of the numerous aspects of the BSW job description. Using the multi-factored test set forth in *Ammons*, Plaintiff fails to meet her burden to present evidence that she could perform the essential functions of the job.

Plaintiff argues, however, that she could have performed the essential functions of the BSW position with accommodation if Defendant had made an attempt to find such an accommodation. An employer is required under the ADA to engage in an interactive process to try to accommodate an individual's disability. *See Timmons*, 469 F.3d at 1125. But "an employer is not required to change the essential functions of a job to accommodate an employee." *Ammons*, 368 F.3d at 819, *quoting Emerson v. Northern States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001). Plaintiff sought to have the BSW position with an accommodation that would allow her not to perform all the functions of the job. *See* Def. Ex. 4 at ¶14.

Additionally, although not argued by Defendant, Plaintiff provides no evidence that her claimed disability, epilepsy, is the condition that prevented her from performing the essential

functions of a BSW and required accommodation. Plaintiff presented evidence about her condition of epilepsy, and presented evidence in the context of the need for an accommodation in terms of shifts, but Plaintiff presented no evidence that epilepsy prevented her from bending, stooping, reaching or lifting. When asked why she could not stoop and bend, Plaintiff answered that "my knees are not good;" when asked why she did not think she could lift trash bags, she answered that the weight of the trash would be the obstacle. Pltf. Dep. at 105. Plaintiff presented no evidence that her knees were the disability,[2] and likewise provided no evidence that the disability is what required the accommodation. Plaintiff has not met her burden to show that Defendant failed to reasonably accommodate her disability of epilepsy when it refused to change the bending, reaching, stooping, and lifting portions of the position she sought.

---

[2] Plaintiff presented evidence from her doctor from June 2004 that she should "be put back to work at any capacity that you deem fit without any restrictions as to work" and that she could clean facilities, stoop, and change linen. Pltf. Ex. R, S.

## Conclusion

Because Hill cannot meet her burden to show that Cook County violated Plaintiff's First Amendment rights, Defendant's Motion for Summary Judgment is granted as to Count I of the Amended Complaint. Because Plaintiff has met her *prima facie* burden to show that Defendant's employee failed to accommodate Plaintiff's religious practice, and because there exists a genuine issue of material fact as to whether such an accommodation created an undue burden for Defendant, Defendant's Motion for Summary Judgment is denied as to Count II of the Amended Complaint. Because Plaintiff cannot show that she is a qualified individual with a disability with respect to the Building Service Worker position, Defendant's Motion for Summary Judgment is granted as to Count III of the Amended Complaint.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 19, 2007